IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00093-WCM

| | |
|---|---|
| JAMIE GALYON, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) MEMORANDUM OPINION<br>) AND ORDER<br>) |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION, | )<br>)<br>) |
| Defendant. | )<br>) |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 14).[1]

## I. Procedural Background

In May of 2015, Plaintiff Jamie Galyon ("Plaintiff") filed an application for supplemental security income, alleging disability beginning on June 30, 1999. Transcript of the Administrative Record ("AR") 371-379.

On March 7, 2018, following an administrative hearing, an unfavorable decision was issued by an Administrative Law Judge ("ALJ"). AR 181-199. Plaintiff challenged that decision under the Appointments Clause of the

---

[1] The parties have consented to the disposition of this case by a United States Magistrate Judge. Doc. 8.

1

Constitution, U.S. Const. Art. II, § 2, cl. 2, and the matter was remanded by the Appeals Council to a different ALJ. See AR 200-203.

On October 7, 2021, following two more administrative hearings, a new ALJ issued an unfavorable decision. AR 14-48. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "migraine headache; seizure disorder; status post left ankle tendon repair; major depressive disorder; social anxiety disorder; insomnia; right knee inferior patella chondromalacia; other specified anxiety disorder; neurocognitive disorder; obesity; fibromyalgia; vestibular system disorder; status post right shoulder arthroscopic surgery; bilateral lower extremity sensory neuropathy; degenerative disc disease of the lumbar and cervical spine; digestive system disorder; hematological disorder; specific learning disorder; and unspecified personality disorder." AR 20. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work . . . except she could occasionally climb ramps and stairs, never climb ropes, ladders, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; have occasional exposure to extreme cold, concentrated noise levels, and vibrations; have no exposure to unprotected heights; and no ambulation on uneven surfaces. She

2

> could occasionally reach overhead with the right upper extremity and occasionally operate foot controls or push and pull with the bilateral lower extremities. She could understand, remember, and carry out simple, uninvolved oral instructions involving a few concrete variables in or from standardized situations; maintain concentration, persistence, and pace to carry out the foregoing work-related instructions for up to two-hour intervals over a normal workday, with customary breaks; interact occasionally with the general public; and interact frequently with supervisors and coworkers.

AR 43-44.

Applying this RFC, the ALJ found that the Plaintiff had the ability to perform certain jobs existing in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 47-48.

### III. Plaintiff's Allegations of Error

Plaintiff contends that, when developing Plaintiff's RFC, the ALJ failed to evaluate her need to elevate her legs appropriately.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden

3

rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion" when assessing a claimant's RFC. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citing Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir.

4

2000)). Although an ALJ is not required to discuss every piece of evidence, see Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), if the ALJ does not indicate how the facts she cites disprove a claimant's need for an accommodation, review of her decision is impossible, and remand is needed. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence"); Darby v. Berryhill, No. 1:16cv366-RJC, 2018 WL 310136, at *6 (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion").

At the same time, it is the claimant's burden to establish that she suffers from an impairment which limits her functional capacity. 20 C.F.R. 404.1505; 416.905; see Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Here, Plaintiff contends that the ALJ erred by either failing to include Plaintiff's need to elevate her lower extremities in Plaintiff's RFC or explaining why such an accommodation was unnecessary.

In support of her position, Plaintiff relies on a February 9, 2021 treatment note signed by Dr. Julia Hartley, DO, of Midway Medical Center Family Medicine, which indicates that Plaintiff presented with complaints of

swelling and pain in both feet and ankles, was assessed with localized edema, and was prescribed a low dose diuretic. AR 2170-2171. The treatment note additionally indicates that Plaintiff was instructed to "continue compression socks and elevation (although not helping) …." AR 2171. Plaintiff also relies on her own hearing testimony, in which she described her need to elevate her legs See AR 137-138 (Plaintiff's 2018 testimony stating that, during a regular week, she would need to prop up her feet and legs two to three times for about twenty-five to thirty minutes); AR 98-99 (Plaintiff's 2020 testimony stating that she "props" her right leg up at home "every time" she has a chance, maybe three to four times a day).

In her decision, the ALJ acknowledged Plaintiff's hearing testimony and that the February 7 treatment note reflected that Plaintiff was instructed to continue to elevate her legs. See AR 35; AR 45. The ALJ noted, however, that while Plaintiff "testified she needs to elevate her legs as often as possible," she also "told her primary care physician it was not beneficial." AR 45 (citing AR 2171).

The ALJ further explained that Plaintiff's complaints of constant, intense pain were inconsistent with multiple examinations reflecting that she was not in acute distress. See AR 45; see also AR 24 (citing AR 1130 (July 2015 treatment record reflecting that Plaintiff hurt her wrist while pushing a fridge, but was not in acute distress); AR 28 (citing AR 1492 (September 2018

6

treatment record reflecting no acute distress), AR 1449 (January 2019 treatment record reflecting no acute distress and no lower extremity edema)); AR 32 (citing AR 1982 (April 2020 treatment record reflecting no acute distress and no generalized swelling or edema of extremities)).

Additionally, the ALJ pointed out that Plaintiff's records indicated "[i]ssues regarding medication compliance," as well other inconsistencies regarding her treatment, and that Plaintiff's reported activities, including taking seven children on a week-long vacation, were inconsistent with Plaintiff's allegations of disability. AR 45 (citing, e.g., AR 1976 (discussing medication compliance)); see also AR 23 (citing AR 845 (July 2015 exam reflecting that Plaintiff "can do all her activities of daily living")); AR 28 (citing AR 1487 (October 2018 record reflecting that Plaintiff was helping care for her grandfather, and that she lived with three daughters and a cousin who also needed care)); AR 31 (citing AR 2151 (reflecting Plaintiff recently moved three other children into her home)); AR 34 (citing AR 2141 (December 2020 mental health treatment record indicating Plaintiff reported she had taken in one of her daughter's 16-year-old friends); AR 2133 (May 2021 mental health record in which Plaintiff reported she was taking seven girls to Pigeon Forge for a week)).

Accordingly, the ALJ's discussion indicates that she properly considered Plaintiff's complaints of leg pain and swelling and developed an RFC to account

for Plaintiff's limitations. Compare Hunter-Tedder v. Berryhill, No. 5:17-cv-53-MOC, 2017 WL 5759941 (W.D.N.C. Nov. 28, 2017) (remanding where the ALJ failed to discuss plaintiff's need to elevate her legs despite plaintiff's treating physician statement that she needed to do so, and explaining that if the ALJ had given the treating physician's opinion no weight as in conflict "with other elements of the record, that would have been an appropriate method of explaining why that limitation was not included," but the ALJ failed to provide that analysis); Hall v. Berryhill, No. 3:17-CV-00285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018) with Edwards v. Commissioner of Social Security, No. 1:21-cv-00134-RJC, 2022 WL 3352298, at *5 (W.D.N.C. Aug. 12, 2022) ("Unlike Hunter-Tedder and Hall, the ALJ in this case noted [plaintiff's] testimony that he required three to eight hours of leg elevation daily, described the medical evidence showing that [plaintiff] had healed in the two years since his injuries, and explained his conclusion that additional limitations for [plaintiff's] lower extremities were unwarranted in light of his recovery").

Under these circumstances, the undersigned is not persuaded that Plaintiff has established that an additional limitation with respect to leg elevation should have been included in her RFC. See Patterson v. Kijakazi, No. 1:20CV1030, 2022 WL 103884, at *9 (M.D.N.C. Jan. 10, 2022) (two treatment notes reflecting "one-time isolated" suggestions that plaintiff elevate her legs did not "equate to a physical restriction or a judgment" about plaintiff's work-

8

related restrictions) (emphasis in original) (citing Cruz v. Commissioner of Soc. Sec. Admin., No. CV-19-04460, 2020 WL 3567033, at *2 (D. Ariz. July 1, 2020) (holding that "ALJ was not obligated to include a need to elevate the legs when sitting in the RFC finding," because the doctor "merely recommended that [the plaintiff] elevate her legs when sitting" and "did not state it was necessary for work" (internal quotation marks and brackets omitted)), aff'd, No. 20-16651, 2021 WL 5357231 (9th Cir. Nov. 17, 2021) (unpublished); see also Estrada Fontanez v. Kijakazi, No. 8:21-cv-2765-AAS, 2023 WL 1993970, at *4 (M.D. Fl. Feb. 14, 2023) (plaintiff failed to establish additional work-related restrictions should have been included in her RFC where, although plaintiff pointed to two treatment notes recommending leg elevation, those same notes also included recommendations regarding diuretics, diet, and weight loss, and the notes "did not specify the frequency with which [plaintiff] should elevate her legs and whether it would impact her ability to complete a normal workday and perform sedentary work as provided in the RFC") (citing Coppedge v. Astrue, No. 3:08-cv-293-J-HTS, 2009 WL 347781, at *2 (M.D. Fla. Feb. 11, 2009) ("The uncertainty of the opinions, as well as their failure to indicate either the frequency or duration of the listed accommodations (e.g., how often the claimant would need to raise her legs or for what length of time she would have to rest), undermines the assertion they should have been incorporated into an RFC finding")).

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Doc. 14) is **GRANTED**.

The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order.

Signed: February 16, 2023

W. Carleton Metcalf
United States Magistrate Judge